UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIV. 19-4082 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| BIRD INDUSTRIES, INC, LAURA J. BIRD, and KLC FINANCIAL., INC., | |
| Defendants. | |

The United States of America, by and through its undersigned attorneys, United States Attorney Ronald A. Parsons and Assistant United States Attorney Cheryl Schrempp DuPris, and on behalf of the United States Department of the Interior (DOI), Office of Indian Energy and Economic Development (IEED), Division of Capital Investment (DCI), hereby states and alleges as follows:

**JURISDICTION & VENUE**

1.     This Court has jurisdiction under 28 U.S.C. § 1345 because the United States is the Plaintiff.

2.     Defendant, Bird Industries, Inc., registered as a business corporation in South Dakota since 2003, maintains its principal office at 504 W. 8th Street S, P.O. Box 429, Brookings, South Dakota, 57006.  Its registered agent is: Registered Agents Inc., 25 1st Ave S.W., Ste A, Watertown, South Dakota, 57201-3507.

3.    Laura Janeen Bird, Guarantor and President of Bird Industries, Inc., resides, or was at the time of the conduct at issue, at 504 W. 8th St. S, Brookings, South Dakota, 57006.

**CLAIM FOR FORECLOSURE OF SECURITY INTEREST**

4.    The chattel property secured that is the subject of this foreclosure action is located in Brookings County, South Dakota, and elsewhere unknown to Plaintiff.

5.    On or about the dates indicated below, Bird Industries, Inc., and Laura Bird, Guarantor, (Borrowers), for value received, made, executed, and delivered to the Native American Bank, N.A. (Bank), Denver Branch, a promissory note, commercial guaranty, and business loan agreement described as follows:

| EXHIBIT | PRINICIPAL OF ORIGINAL NOTE | DATE OF ORIGINAL NOTE | RATE OF INTEREST |
|---------|------------------------------|------------------------|------------------|
| 1 | $680,000.00 | 05/06/2016 | Variable |
| 2 | $680,000.00 | 05/06/2016 | Variable |
| 3 | $680,000.00 | 05/06/2016 | Variable |

A true and correct copy of said promissory note, guaranty, and business loan agreement are attached hereto as Exhibits 1, 2, and 3.

6.    The Bank's loan was guaranteed by the DOI's Loan Guarantee, Insurance and Interest Subsidy Program, 25, U.S.C. §§ 1481 *et seq.*, 1511 *et seq,* and 25 C.F.R. Part 103.   The Bank advanced the full $680,000.00 to Borrowers. After Borrowers defaulted, the Bank submitted a claim of loss, the DOI paid the

claim, and the Bank assigned the loan to the DOI.   A true and correct copy of the Assignment of Loan Documents and Related Rights is attached as Exhibit 4.

7.   A Certificate of Indebtedness, attached as Exhibit 5, states that the following amounts are currently due and owing upon the note:

| | |
|---|---|
| Principal: | $594,111.40 |
| Accrued Interest as of September 6, 2018: | $53,287.60 |
| Total Amount Due: | $647,399.00 |

8.   As security for the notes, Borrowers made, executed, and delivered to Bank a security agreement and agreement to provide insurance, describing the collateral for the loan as follows:

| EXHIBIT NUMBER | DATE OF SECURITY AGREEMENT | PERSON PLEDGING COLLATERAL | GENERAL DESCRIPTION OF COLLATERAL PLEDGED |
|---|---|---|---|
| 6 | 05/06/2016 | Bird Indus; Laura Bird | • 2002 Kenworth Construct T800 Truck (VIN 1XKDDB9X02R899365)<br>• 2003 Kenworth Construct T800 Truck (VIN 1XKDDB9X53R388607)<br>• 2003 Kenworth Construct T800 Truck (VIN 3WKDDB9X93F384546)<br>• 2007 Peterbilt Conventional 378 Truck (VIN 1XPFDB9X97N742323)<br>• 2006 Kenworth Construct W900 Truck (VIN 1XKWDB9X86R115237)<br>• 2007 Peterbilt Conventional 378 Truck (VIN 1XPFDB9X77N742322)<br>• 2003 Peterbilt Conventional 379 Truck (VIN 1XPSD49X23D597164)<br>• 1993 Peterbilt Conventional 379 Truck (VIN 1XP5DB9X1PD331810) |

| EXHIBIT NUMBER | DATE OF SECURITY AGREEMENT | PERSON PLEDGING COLLATERAL | GENERAL DESCRIPTION OF COLLATERAL PLEDGED |
|---|---|---|---|
| | | | <ul><li>1982 Standard Trailer (VIN 1S9T74221C0017016)</li><li>2011 Menard Vacuum Trailer (VIN 1M9TS4023BD815324)</li><li>2011 Hercules Trailer (VIN 3M9H5TA23BG009129)</li><li>2011 Dragon Trailer (VIN 1UNST4227BL086784)</li><li>2014 Galyean 180BB1 Vacuum Tank Trailer (VIN 1G9VT5037EH015033)</li><li>2014 Galyean 180BBI Vacuum Tank Trailer (VIN 1G9VT5033EH015031)</li><li>2014 Galyean 180BBI Vacuum Tank Trailer (VIN 1G9VT5035EH015032)</li><li>2001 International 92001 Truck (VIN 2HSCEAERX1C003632)</li><li>1996 Mack 600 CH600 1M2AA13Y1TW061217</li><li>2000 Freightliner Conventional FLD120 Truck (VIN 1FUPCDYB8YPB09100)</li><li>1994 Herr Trailer (VIN 1L7HSFS150N101194)</li><li>2008 DCT Trailer (VIN 4GBF1624681018084)</li><li>2004 Ford F250 Super Duty Pickup Truck (VIN 1FTNW21P64ED72768)</li><li>2004 Ford F150 4 Door Ext Cab Truck (VIN 1FTPX14504NA04757</li></ul> |

Borrowers also agreed to further encumber all inventory, equipment, accounts,

chattel paper, investment property, money, rights to payment and performance,

general intangibles, all oil, gas, fixtures, increases, tools, parts, supplies and

commingled goods, all additions, replacements and substitutions, all records, data and software, whether existing or hereafter arising, and all products and proceeds, including insurance payments, related to the foregoing. A true and correct copy of the security agreement and agreement to provide insurance are attached as Exhibit 6.

9.   The security interests noted above were perfected by filing the required UCC Financing Statement with the South Dakota Secretary of State on May 16, 2016, at Document number 20161331152346.   A true and correct copy of the UCC filing is attached as Exhibit 7.

10.   Plaintiff is now the owner and holder of the note, guaranty, and security agreement.

11.   The note provides that failure to pay when due any debt evidenced by the note or perform any covenant of agreement shall constitute default. Exhibit 1, page 1.   Upon default, Plaintiff may declare all or any part of Borrower's indebtedness immediately due and payable, among other rights. Exhibit 1, page 2.

12.   The   guaranty   provides   that   Guarantor   absolutely   and unconditionally guarantees full and punctual payment and satisfaction of the indebtedness and performance of all obligations under the note even when Plaintiff has not exhausted its remedies against anyone else or against any collateral securing the indebtedness.   Exhibit 2, page 1.

13.   The security agreement provides, in part, that default occurs if Borrowers fail to make any payment when due, or fail to comply with or to

perform any term, obligation or condition contained in the security agreement or any other agreement between the parties.  Exhibit 6, page 4.   Upon default, Plaintiff may accelerate the indebtedness, declare the unpaid balance on the note, and any indebtedness secured by the security agreement, immediately due and payable and exercise any sale or other rights accorded by law, among other rights. *Id.*

14.   Borrowers are in default of the terms of the note, guaranty, and security agreement because they failed to make timely payments of principal and interest when due. Because of Borrowers' default, Plaintiff accelerated the notes, declared all of the debt evidenced thereby immediately due and payable, and is entitled to judicially enforce Plaintiff's security interests and have all chattels sold in the manner prescribed by law with the proceeds applied to the amounts due.

15.   Plaintiff notified Borrowers that the debt had been accelerated.   A true and correct copy of the acceleration notices are attached as Exhibit 8. All attempts at remediation failed.

16.   No other action at law or proceeding in equity or otherwise has been commenced or is now pending for foreclosure or judgment upon these notes.

17.   Plaintiff is entitled to all proper costs incurred, or to be incurred by Plaintiff, from the time this Complaint is filed to the conclusion of this action.

18.   The notes and security agreement provide that the Plaintiff may expend money for the collection of the note or to preserve or protect any security for the loan, and at the option of Plaintiff, those amounts shall become part of

the principal amount of the debt and shall bear interest at the rate provided in the notes. Exhibits 1, 2, & 6. These amounts are immediately due and payable by the Borrower to Plaintiff without demand.

19.    The fair and reasonable value of the chattel security is less than the debt, including all costs and advances, owed by the Borrower.

20.    Upon information and belief, the majority of the secured property (including replacements, substitutions, additions, and accessions thereto) is in the possession of Laura Bird.

21.    The following Defendant may claim some lien or interest in some of the chattel property which is subject to this action:

| LIENHOLDER / INTEREST HOLDER | TYPE OF LIEN / PROPERTY | UCC FILING DATE | INFERIOR or SUPERIOR |
|---|---|---|---|
| KLC FINANCIAL, INC. 3514 COUNTY ROAD 101 MINNETONKA MN | All equipment listed on lease 2973A, including three 2014 Galyean Vacuum Tanks VINS: 1G9VT5033EH015031 1G9VT5035EH015032 1G9VT5037EH015033 Attachments and upgrades | 07/25/2014 | Superior |

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor as follows:

1.    Judgment be entered against Borrowers in the amount of $647,399.00, jointly and severally, as of September 6, 2018, together with any

additional sums advanced, costs or expenses expended herein, and interest accruing thereon.

2. A Decree of Sale be entered directing the United States Marshal or his deputy to sell the chattel property as provided by law, without the right of redemption, and to apply the proceeds as follows: (a) to the costs and expenses of sale; (b) to the payment of the costs and disbursements taxed in the action in which the sale is made; (c) to payment on the debt adjudged by the Court to be due; (d) to pay the surplus, if any, into court for the use of the Borrower or the person entitled thereto, subject to the order of the Court.

3. The security interest of the Plaintiff in the above described chattel property be foreclosed and that the Borrower be adjudged to have no further right, title, or interest in said chattel property.

4. The Borrower or those individuals in possession of Borrower's chattel be directed to peacefully assemble and deliver to the United States Marshal the herein described chattel property.

5. The United States Marshal be directed to take possession of said chattel property and, after advertising for sale according to law, to sell the chattel property in the manner provided for by law, and to apply the proceeds to the costs and expenses of sale, Plaintiff's costs and expenses of this action, and the indebtedness due to Plaintiff.

6. The Court determine the lien priority of the parties and interests of the parties and order the Marshal to distribute the proceeds accordingly.

8

7.    All Defendants, together with each and every person or entity claiming under them or claiming any lien or encumbrance of any kind or character upon or against said chattel property subsequent in time or in priority, or both, to the liens of the Plaintiff's security agreements, and all persons claiming to acquire any right, title, or interest in and to said chattel property or any part thereof subsequent to the filing of said security agreements be barred and foreclosed of and from all rights, title, or interest in and to said property.

8.    Plaintiff be awarded or otherwise reimbursed for the costs and disbursements of this action.

9.    To the extent the net proceeds from the sale of the collateral are less than the amount of the debt owed to Plaintiff, Plaintiff requests a deficiency judgment against the Borrowers, jointly and severally, for any sums which remain unsatisfied after the sale of the collateral.

10.    Any other relief the Court deems to be just and equitable.

Dated this _25th_ day of April, 2019.

RONALD A. PARSONS, JR.
United States Attorney

Cheryl Schrempp DuPris
Assistant United States Attorney
P.O. Box 7240
Pierre, SD 57501
(605) 945-4553
Fax: 605.223.8305
Cheryl.Dupris@usdoj.gov

9

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| UNITED STATES OF AMERICA | BIRD INDUSTRIES, INC, AND LAURA BIRD, Guarantor and President of Bird Industries, Inc. and KLC Financial, Inc. |
| **(b)** County of Residence of First Listed Plaintiff _____<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant   Brookings<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)*<br><br>Cheryl Schrempp DuPris, Assistant United States Attorney<br>P.O. Box 7240, Pierre, SD, 57501 (605) 224-5402 | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
        Plaintiff

☐ 2   U.S. Government
        Defendant

☐ 3   Federal Question
        *(U.S. Government Not a Party)*

☐ 4   Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☒ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
25 U.S.C. Sec. 1481 et seq.

Brief description of cause:
Foreclosure upon chattels securing guaranteed loan in default and for deficiency judgment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   647,399.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   04/25/19

SIGNATURE OF ATTORNEY OF RECORD   *Cheryl Schrempp DuPris*

### FOR OFFICE USE ONLY

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $680,000.00 | 05-06-2016 | 05-01-2023 | ████ | 312, 802, 203 /<br>103 | | SL | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  BIRD INDUSTRIES, INC.
PO BOX 487
Brookings, SD 57006

**Lender:**  Native American Bank, N.A.
Denver Branch
999 18th Street, Suite 2460
Denver, CO 80202

---

**Principal Amount: $680,000.00**                                            **Date of Note: May 6, 2016**

**PROMISE TO PAY.** BIRD INDUSTRIES, INC. ("Borrower") promises to pay to Native American Bank, N.A. ("Lender"), or order, in lawful money of the United States of America, the principal amount of Six Hundred Eighty Thousand & 00/100 Dollars ($680,000.00), together with interest on the unpaid principal balance from May 6, 2016, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 84 payments of $10,036.82 each payment. Borrower's first payment is due June 1, 2016, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on May 1, 2023, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied to All payments shall be applied first to permitted charges, then to accrued interest and then to principal.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the the base rate on corporate loans posted by at least 70% of the 10 largest US banks known as the Wall Street Journal US Prime Rate, as published in the Wall Street Journal Money Rates Section (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each first day of each calendar quarter. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 3.500% per annum.** Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.750 percentage points over the Index, resulting in an initial rate of 6.250% per annum based on a year of 360 days. **NOTICE:** Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Native American Bank, N.A.
Denver Branch
999 18th Street, Suite 2460
Denver, CO 80202

All payments must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 3:30 pm on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $25.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Native American Bank, N.A.; Denver Branch; 999 18th Street, Suite 2460; Denver, CO 80202.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false

**PROMISSORY NOTE**
**(Continued)**

Loan No: ███████

Page 2

or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the reasonable costs of such collection. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Colorado.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Denver County, State of Colorado.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein: inventory, chattel paper, accounts, equipment, general intangibles, fixtures, standing timber, mineral, oil and gas and motor vehicles described in Commercial Security Agreements dated May 6, 2016.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Native American Bank, N.A. 999 18th Street, Suite 2460 Denver, CO 80202.

**ERRORS AND OMISSIONS.** Borrower understands and agrees that in the event any of the documents evidencing and/or securing the above-referenced Loan (the Loan) misstate or inaccurately reflect the true and correct terms and provisions of the Loan due to unilateral mistake on the part of the Lender, mutual mistake on the part of the Lender and the Borrower, or clerical error, the Borrower shall upon the request by Lender execute such new documents or initial such corrected original documents as Lender may deem necessary to remedy said inaccuracy or mistake. Failure by the Borrower to initial or execute such documents as requested shall constitute a default under the Note evidencing the Loan. Borrower agrees to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

Loan No: ▮▮▮▮▮▮

**PROMISSORY NOTE**
**(Continued)**

Page 3

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.  BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

BIRD INDUSTRIES, INC.

By: _____
     LAURA J. BIRD, President of BIRD INDUSTRIES,
     INC.

LENDER:

NATIVE AMERICAN BANK, N.A.

X _____
     Shannon Loeve, VP/Relationship Manager

LaserPro, Ver. 13.5.20.036  Copr. D+H USA Corporation 1997, 2016.  All Rights Reserved. - CD  L:\CFI\LPL\D20.FC  TR-31  PR-6

BIRD EXHIBIT 1

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | 812, 802, 203 / 103 | | SL | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " * * * * " has been omitted due to text length limitations.

**Borrower:** BIRD INDUSTRIES, INC.
PO BOX 487
Brookings, SD 57006

**Lender:** Native American Bank, N.A.
Denver Branch
999 18th Street, Suite 2460
Denver, CO 80202

**Guarantor:** LAURA J. BIRD

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include any of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this

BIRD EXHIBIT 2

# COMMERCIAL GUARANTY
## (Continued)

Loan No: ██████████

Page 2

Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

**Annual Statements.** As soon as available, but in no event later than 15 days after the end of each fiscal year, Guarantor's balance sheet and income statement for the year ended, prepared by Guarantor.

**Tax Returns.** As soon as available, but in no event later than 15 days after the applicable filing date for the tax reporting period ended, Guarantor's Federal and other governmental tax returns, prepared by a tax professional satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

## COMMERCIAL GUARANTY
### (Continued)

**Attorneys' Fees; Expenses.**  Guarantor agrees to pay upon demand all of Lender's reasonable costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty.  Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the reasonable costs and expenses of such enforcement.  Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.**  Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.**  This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions.

**Choice of Venue.**  If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Denver County, State of Colorado.

**Integration.**  Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty.  Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.**  In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them.  The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them.  If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced.  Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable.  If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.**  Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty.  All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY."  Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.  For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address.  Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty.  No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.**  Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.**  Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**DEFINITIONS.**  The following capitalized words and terms shall have the following meanings when used in this Guaranty.  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.**  The word "Borrower" means BIRD INDUSTRIES, INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GAAP.**  The word "GAAP" means generally accepted accounting principles.

**Guarantor.**  The word "Guarantor" means everyone signing this Guaranty, including without limitation LAURA J. BIRD, and in each case, any signer's successors and assigns.

**Guaranty.**  The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.**  The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.**  The word "Lender" means Native American Bank, N.A., its successors and assigns.

**Note.**  The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.**  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

BIRD EXHIBIT 2

**COMMERCIAL GUARANTY**
**(Continued)**

Loan No: ███████

Page **4**

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MAY 6, 2016.

GUARANTOR:

X _____
    LAURA J. BIRD

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___Colorado___                            )
                                                    ) SS
COUNTY OF ___La Plata___                           )

┌─────────────────────────────────┐
│         LEAH LANDES             │
│       NOTARY PUBLIC             │
│     STATE OF COLORADO           │
│   NOTARY ID 20144041680         │
│ MY COMMISSION EXPIRES 10/27/2018│
└─────────────────────────────────┘

On this day before me, the undersigned Notary Public, personally appeared LAURA J. BIRD, to me known to be the Individual described in and who executed the Commercial Guaranty, and acknowledged that he or she signed the Guaranty as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ___4th___ day of ___May___ , 20 _16_ .

By _____     Residing at _1099 Main Ave, Durango CO_

Notary Public in and for the State of ___Colorado___     My commission expires _10/27/2018_

BIRD EXHIBIT 2

# BUSINESS LOAN AGREEMEN[

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $680,000.00 | 05-06-2016 | 05-01-2023 | | 212 802 203 / 103 | | SL | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**   BIRD INDUSTRIES, INC.
PO BOX 487
Brookings, SD 57006

**Lender:**   Native American Bank, N.A.
Denver Branch
999 18th Street, Suite 2460
Denver, CO 80202

---

**THIS BUSINESS LOAN AGREEMENT** dated May 6, 2016, is made and executed between BIRD INDUSTRIES, INC. ("Borrower") and Native American Bank, N.A. ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of May 6, 2016, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until May 1, 2023.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of South Dakota. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains its principal office at 200 N 3RD STREET, BISMARK, ND 58501. Unless Borrower has designated otherwise in writing, this is the principal office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: None.

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of incorporation or organization, or bylaws, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Loan No: ▮▮▮▮▮▮

Page 2

the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following:

**Tax Returns.** As soon as available, but in no event later than 15 days after the applicable filing date for the tax reporting period ended, Borrower's Federal and other governmental tax returns, prepared by a tax professional satisfactory to Lender.

**Additional Requirements.**
**Interim Statements**
As soon as available, but in no event later than forty five (45) days after the end of each fiscal quarter, Borrower's balance sheet and income statement for the fiscal quarter ended and Borrower's balance sheet and income statement for the period starting first day of the fiscal year to the end of the fiscal quarter ended, prepared by Borrower.

**Personal Tax Returns**
As soon as available, but in no event later than fifteen (15) days after the applicable filing date for the tax reporting period ended, Guarantor's Federal and other governmental tax returns, prepared by a tax professional satisfactory to Lender.

**Personal Financial Statements**
As soon as available, but in no event later than one hundred twenty (120) days after the end of each fiscal year, Guarantor's balance sheet and income statement for the year ended, prepared by the Guarantor.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Financial Covenants and Ratios.** Comply with the following covenants and ratios:

**Tangible Net Worth Requirements.** Borrower shall comply with the following net worth ratio requirements:

**Debt / Worth Ratio.** Maintain a ratio of Debt / Worth not in excess of **2.500 to 1.000.** The ratio "Debt / Worth" means Borrower's Total Liabilities divided by Borrower's Tangible Net Worth. This leverage ratio will be evaluated as of year-end.

**Additional Requirements.**
**Debt Service Coverage Ratio**
The debt service coverage is to be no less than 1.20 calculated by dividing earnings before interest, depreciation and amortization (EBIDA) by the total of interest, current maturities of long term debt from previous year's and debt service on lines of credit assumed to be fully utilized amortized over three years. This coverage ratio will be evaluated annually at each fiscal year end.

**Deposit Relationship Required**
Borrower agrees and covenants that until all obligations of the Borrower to the Lender are paid and satisfied in full, and Lender's

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Loan No: ▮▮▮▮▮▮                                                                                          Page 3

obligation to make advances hereunder has terminated, Borrower will maintain its principal operating, depository and savings accounts with Lender and will not utilize any other financial institution for any of its principal operating, depository or savings accounts. Failure to do so will constitute an Event of Default.

**Lienholder Position**
   1) Borrower agrees and covenants that it will acquire the ownership rights of three titled trailers, (VIN: 1G9VT5037EH015033, VIN: 1G9VT5037EH015032, VIN: 1G9VT5037EH015031), upon the successful completion of lease contracts scheduled to expire August 31, 2016 (Expiration Date). Borrower further covenants that it will pursue the delivery of original vehicle titles on these trailers, and in turn, sign and deliver said titles to Lender to perfect Lender's lienholder position, no later than 45 days after the Expiration Date.

   2) Borrower will assure all provisions of the Release Agreement with Gulf Coast Bank and Trust are met and the effectiveness of Gulf Coast Bank and Trust's UCC Financing Statement is terminated on or before the date of this Agreement. Borrower will provide to Lender the recorded UCC termination statement within 30 days from the date of this Agreement.

Except as provided above, all computations made to determine compliance with the requirements contained in this paragraph shall be made in accordance with generally accepted accounting principles, applied on a consistent basis, and certified by Borrower as being true and correct.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantor named below, on Lender's forms, and in the amount and under the conditions set forth in those guaranties.

| Name of Guarantor | Amount |
|---|---|
| **LAURA J. BIRD** | **Unlimited** |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for the following specific purposes: **The Loan Proceeds may not be connected or attributed to gaming or the facilitation thereof.**

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons,

# BUSINESS LOAN AGREEMENT
## (Continued)

lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Additional Financial Restrictions.**
**Owner's Compensation .**
Owner's draws and salary will be allowed without limit provided that the payment of such would not result in a violation of the above Debt Service Coverage Ratio or Debt / Worth Ratio covenants.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if:  (A)  Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender;  (B)  Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt;  (C)  there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or  (D)  any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or  (E)  Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Loan No: █████████                                                                                                          Page 5

EFFECT OF AN EVENT OF DEFAULT. If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's reasonable costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the reasonable costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Colorado.

**Choice of Venue.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Denver County, State of Colorado.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in making the Loan, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**BUSINESS LOAN AGREEMENT**
(Continued)

Loan No: ▮▮▮▮▮▮                                                                                                    Page 6

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means BIRD INDUSTRIES, INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause, or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Native American Bank, N.A., its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note dated May 6, 2016 and executed by BIRD INDUSTRIES, INC. in the principal amount of $680,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law,

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Loan No: ▓▓▓▓▓

Page 7

contract, or otherwise.

**Tangible Net Worth.** The words "Tangible Net Worth" mean Borrower's total assets excluding all intangible assets (i.e., goodwill, trademarks, patents, copyrights, organizational expenses, and similar intangible items, but including leaseholds and leasehold improvements) less total debt.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED MAY 6, 2016.

BORROWER:

BIRD INDUSTRIES, INC.

By: _____
    LAURA J. BIRD, President of BIRD INDUSTRIES,
    INC.

LENDER:

NATIVE AMERICAN BANK, N.A.

By: _____
    Shannon Loeve, VP, Relationship Manager

LaserPro, Ver. 15.3.20.034  Copr. D + H USA Corporation 1997, 2016.  All Rights Reserved.   - CO  L:\CFI\LPL\C40.FC  TR-31  PR-6

IA Form ALD10
Revised January 2016

OMB Control No ███████
Expires:  1/31/20019

## ASSIGNMENT OF LOAN DOCUMENTS AND RELATED RIGHTS

Native American Bank, N.A. ("Lender") hereby assigns to the Department of the Interior ("Department") all rights the Lender has under the loan documents identified on the attached **Exhibit A**.  The Lender makes this Assignment under the terms of the Department's Loan Guarantee, Insurance and Interest Subsidy Program, 25 U.S.C. §§ 1481 *et seq.*, 1511 *et seq.*, and 25 CFR Part 103 (the "Program"), upon final payment from the Department for the Lender's Claim for Loss under the following instrument(s):

☒    Department Loan Guarantee Certificate Number ████████
☐    Department Loan Insurance Agreement Number _____, with respect to the loan identified in **Exhibit A**.

The persons signing below represent to the Department that they have due authorization and power to sign this Assignment in the capacity stated and to bind the Lender.  The Lender also represents to the Department that immediately prior to making this Assignment, it was the sole owner of the Lender's interest in the documents and rights assigned hereby, or the duly authorized agent of all such parties.

This Assignment is binding on the Lender, as well as its officers, directors, employees, agents, heirs, executors, administrators, assigns, successors in interest, predecessors in interest, and anyone else claiming by, through or under the Lender.  In the event any claim, demand, or action is brought or pursued by, through, or under the Lender in contradiction of this Assignment, the Lender agrees to indemnify the Department and hold it harmless with respect to the claim, demand or action.

Lender:  Joel Smith, SVP/Chief Credit Officer

By: _____

Its: ____SUP-CCO_____

Paperwork Reduction Act Statement: This form is covered by the Paperwork Reduction Act.  It is used to transfer certain rights from the respondent to the Federal government.  The information is provided by respondents to obtain or retain a benefit.  In compliance with the Paperwork Reduction Act of 1995, as amended, the collection has been reviewed by the Office of Management and Budget and assigned a number and an expiration date.  The number and expiration date are at the top right corner of the form.  An agency may not sponsor or conduct, and a person is not required to respond to, a request for information collection unless it displays a currently valid OMB Control Number.  The public reporting burden is estimated to average *1 hour per respondent*.  This includes the time needed to understand the requirements, gather the information, complete the form, and submit it to the Department.  Comments regarding the burden or other aspects of the form may be directed to the Indian Affairs Information Collection Clearance Officer, Office of Regulatory Affairs – Indian Affairs, 1849 C Street, NW, MS-4141, Washington, DC 20240.

IA Form ALD10
Revised January 2016

OMB Control No. ████████
Expires: 1/31/20019

Privacy Act Statement (5 U.S.C. 552(a)): The authority for collecting this information is 25 U.S.C. 1511. The information will be used to administer the Loan Guarantee, Insurance and Interest Subsidy Program, 25 U.S.C. 1481 *et* seq. Disclosures of this information may be made to track and record payments and unpaid balances and provide information on payments made for paying interest subsidy, credits obtained, service loans made, and premiums paid by Lenders, and for the other routine uses described by system of record notice, BIA-13, Loan Management and Accounting System.

BIRD EXHIBIT 4

IA Form ALD10
Revised January 2016

OMB Control No. 

## Exhibit A
## Loan Documents

The following loan documents are all subject to the Assignment of Loan Documents and Related Rights, to which this Exhibit is attached.  Except as otherwise noted, the loan documents are all dated May 6, 2016:

☒      Note from Lender to Bird Industries, Inc. ("Borrower") in the original principal amount of $680,000.00.

☐      Deed of Trust/Mortgage from Borrower to Lender, recorded on _____, 20_____ at Book _____, Page _____ in the _____ (Recorder's Office).

☒      Security Agreement from Bird Industries, Inc. to Lender.

☒      Financing statement from Borrower to Lender, recorded on May 16, 2016 at Book N/A, Page N/A in the SOS, SD under filing #20161331152346 (Recorder's Office).

☒      Guarantee from Laura J. Bird ("Guarantor") to Lender.

☒      Other (specify) Financing statement from Borrower to Lender, recorded on May 20, 2016, in SOS ND under filing #16-000051613-7.

☒      Other (specify) Titles as described in the attached Exhibit B.

☒      Other (specify) Commercial Loan Agreement between Lender and Borrower.

☒      Other (specify) Authorization by Bird Industries, Inc.

x Other: Security Agreement from Laura J. Bird to Lender
x Other: Sercurity Agreement from Bird Industries, Inc.



# United States Department of the Interior

## OFFICE OF THE SECRETARY
Washington, DC 20240

## CERTIFICATE OF INDEBTEDNESS

Bird Industries, Inc.
Registered Agent: Eric Rasmussen
1441 6th Street Suite 200
Brookings, SD. 57006

Laura Bird

**Total debt due United States as of Date: August 21, 2018**
      **Principal: $ 594,111.40**
**Interest (through Date \*):   $ 53,287.60**
       Total: $ 647,399.00

**\*As per the Promissory Note executed on Date May 6, 2016**

I certify that the Department of the Interior, Office of Indian Energy and Economic Development (OIEED), Division of Capital Investment (DCI), and the Bureau of Indian Affair's (BIA) Loan Accounting Section (LAS) record shows that the debtors named above are indebted to the United States in the amount stated above.

The claim arose from a defaulted Guaranteed Loan pursuant to 25 CFR Part 103.

**CERTIFICATION:** Pursuant to 25 USC § 1746(2), I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief based upon information provided by the Department of the Interior, Office of Indian Energy and Economic Development (OIEED), Division of Capital Investment (DCI), and the Bureau of Indian Affair's (BIA) Loan Accounting Section (LAS).

Date September 6, 2018

Sherrie A. Miller
Collections Coordinator
Division of Capital Investment
Office of Indian Energy and Economic Development
U. S. Department of the Interior

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No. | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $680,000.00 | 05-06-2016 | 05-01-2023 | | 312, 802, 203 / 103 | | SL | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " * * * * " has been omitted due to text length limitations.

**Grantor:**  BIRD INDUSTRIES, INC.
PO BOX 487
Brookings, SD 57006

**Lender:**  Native American Bank, N.A.
Denver Branch
999 18th Street, Suite 2460
Denver, CO 80202

---

THIS COMMERCIAL SECURITY AGREEMENT dated May 6, 2016, is made and executed between BIRD INDUSTRIES, INC. ("Grantor") and Native American Bank, N.A. ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**FUTURE ADVANCES.** In addition to the Note, this Agreement secures all future advances made by Lender to Grantor regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and Instruments if not delivered to Lender for possession by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Loan No: ▮▮▮▮▮▮▮

Page 2

and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of South Dakota, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this

BIRD EXHIBIT 6

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the

Loan No: 

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Page 4

Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the South Dakota Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law. With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Collateral, this Agreement will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of**

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: [redacted]                                                                                                                Page **5**

**South Dakota.** In all other respects, this Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Agreement is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Agreement has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Colorado.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Denver County, State of Colorado.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means BIRD INDUSTRIES, INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means BIRD INDUSTRIES, INC..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical,

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: ███████                                                                                          Page 6

chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Agreement together with all interest thereon.

**Lender.** The word "Lender" means Native American Bank, N.A., its successors and assigns.

**Note.** The word "Note" means the Note dated May 6, 2016 and executed by BIRD INDUSTRIES, INC. in the principal amount of $680,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED MAY 6, 2016.**

**GRANTOR:**

BIRD INDUSTRIES, INC.

By: _____
   LAURA J. BIRD, President of BIRD INDUSTRIES, INC.

This document was prepared by:

LaserPro, Ver. 15.3.20.036  Copr. D+H USA Corporation 1997, 2016.  All Rights Reserved.  - SD/CO  L:\CFI\LPL\E40.FC  TR-31  PR-6

## COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $680,000.00 | 05-06-2016 | 05-01-2023 | | 812, 802, 203 / 103 | | SE | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Grantor:** BIRD INDUSTRIES, INC.
PO BOX 487
Brookings, SD  57006

**Lender:** Native American Bank, N.A.
Denver Branch
999 18th Street, Suite 2460
Denver, CO  80202

THIS COMMERCIAL SECURITY AGREEMENT dated May 6, 2016, is made and executed between BIRD INDUSTRIES, INC. ("Grantor") and Native American Bank, N.A. ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

**2002 KENWORTH CONSTRUCT T800 TRUCK (VIN 1XKDDB9X02R899365)**

**2003 KENWORTH CONSTRUCT T800 TRUCK (VIN 1XKDDB9X53R388607)**

**2003 KENWORTH CONSTRUCT T800 TRUCK (VIN 3WKDDB9X93F384546)**

**2007 PETERBILT CONVENTIONAL 378 TRUCK (VIN 1XPFDB9X97N742323)**

**2006 KENWORTH CONSTRUCT W900 TRUCK (VIN 1XKWDB9X86R115237)**

**2007 PETERBILT CONVENTIONAL 378 TRUCK (VIN 1XPFDB9X77N742322)**

**2003 PETERBILT CONVENTIONAL 379 TRUCK (VIN 1XP5D49X23D597164)**

**1993 PETERBILT CONVENTIONAL 379 TRUCK (VIN 1XP5DB9X1PD331810)**

**1982 STANDARD TRAILER (VIN 1S9T74221C0017016)**

**2011 MENARD VACUUM TRAILER (VIN 1M9TS4023BD815324)**

**2011 HERCULES TRAILER (VIN 3M9H5TA23BG009129)**

**2011 DRAGON TRAILER (VIN 1UNST4227BL086784)**

**2014 GALYEAN 180BBl VACUUM TANK TRAILER (VIN 1G9VT5037EH015033)**

**2014 GALYEAN 180BBl VACUUM TANK TRAILER (VIN 1G9VT5033EH015031)**

**2014 GALYEAN 180BBl VACUUM TANK TRAILER (VIN 1G9VT5035EH015032)**

**2001 INTERNATIONAL 9200l TRUCK (VIN 2HSCEAERX1C003632)**

**1996 MACK 600 CH600 1M2AA13Y1TW061217**

**2000 FREIGHTLINER CONVENTIONAL FLD120 TRUCK (VIN 1FUPCDYB8YPB09100)**

**1994 HERR TRAILER (VIN 1L7HSFS150N101194)**

**2008 DCT TRAILER (VIN 4GBF1624681016084)**

**2004 FORD F250 SUPER DUTY PICKUP TRUCK (VIN 1FTNW21P64ED72768)**

**2004 FORD F150 4 DOOR EXT CAB TRUCK (VIN 1FTPX14504NA04757)**

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Loan No: ▮▮▮▮▮▮                                                                                    Page 2

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**FUTURE ADVANCES.** In addition to the Note, this Agreement secures all future advances made by Lender to Grantor regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except for vehicles, and except otherwise in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. If the Collateral is a vehicle, Grantor will keep the Collateral at those addresses except for routine travel. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of North Dakota, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest

# COMMERCIAL SECURITY AGREEMENT
Loan No: ██████████      **(Continued)**                 Page 3

the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion.  If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral.  In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral.  Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.  Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner.  Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.**  Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity.  Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.**  Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance.  The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances.  Grantor hereby  (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and  (2)  agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement.  This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.**  Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender.  Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice.  Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person.  In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require.  If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover Lender's interest in the Collateral.

**Application of Insurance Proceeds.**  Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance.  Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty.  All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral.  If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration.  If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor.  Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.**  Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid.  If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender.  The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due.  Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor.  The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.**  Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following:  (1)  the name of the insurer;  (2)  the risks insured;  (3)  the amount of the policy;  (4)  the property insured;  (5)  the then current value on the basis of which insurance has been obtained and the manner of determining that value; and  (6)  the expiration date of the policy.  In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.**  Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest.  At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property.  Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs.  Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default.  Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.**  Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral.  Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts.  At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness.  If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care.  Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.**  If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to

# COMMERCIAL SECURITY AGREEMENT
**(Continued)**

discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the North Dakota Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders,

# COMMERCIAL SECURITY AGREEMENT
**(Continued)**

Loan No: ▮▮▮▮▮▮

Page 5

---

documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Collateral, this Agreement will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of North Dakota. In all other respects, this Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Colorado without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Agreement is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Agreement has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Colorado.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Denver County, State of Colorado.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Loan No: ████████                                                              Page 6

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means BIRD INDUSTRIES, INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means BIRD INDUSTRIES, INC..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Agreement together with all interest thereon.

**Lender.** The word "Lender" means Native American Bank, N.A., its successors and assigns.

**Note.** The word "Note" means the Note dated May 6, 2016 and executed by BIRD INDUSTRIES, INC. in the principal amount of $680,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED MAY 6, 2016.**

**GRANTOR:**

BIRD INDUSTRIES, INC.

By: _____
LAURA J. BIRD, President of BIRD INDUSTRIES, INC.

# AGREEMENT TO PROVIDE INSURANCE

*new one*

*includes 22 vehicles*

| Principal | Loan Date | Maturity | Loan No. | Call / Coll | Account | Of |
|-----------|-----------|----------|----------|-------------|---------|-----|
| $680,000.00 | 05-06-2016 | 05-01-2023 | | 312 802 203 / | 103 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular
Any item above containing "****" has been omitted due to text length limitations.

**Grantor:**  BIRD INDUSTRIES, INC.
PO BOX 487
Brookings, SD 57006

**Lender:**  Native American Bank, N.A.
Denver Branch
999 18th Street, Suite 2460
Denver, CO 80202

---

**INSURANCE REQUIREMENTS.** Grantor, BIRD INDUSTRIES, INC. ("Grantor"), understands that insurance coverage is required in connection with the extending of a loan or the providing of other financial accommodations to Grantor by Lender. These requirements are set forth in the security documents for the loan. The following minimum insurance coverages must be provided on the following described collateral (the "Collateral"):

**Collateral:**  All Inventory, Equipment, Fixtures, Timber and Minerals, Oil and Gas.
Type: All risks, including fire, theft and liability.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements: Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Latest Delivery Date: By the loan closing date.

**Collateral:**  All Inventory, Equipment, Fixtures, Timber and Minerals, Oil and Gas.
Type: All risks, including fire, theft and liability.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements: Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Latest Delivery Date: By the loan closing date.

**Collateral:**  2002 KENWORTH CONSTRUCT T800 TRUCK (VIN 1XKDDB9X02R899365).
Type: Comprehensive and collision.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements: Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Latest Delivery Date: By the loan closing date.

**Collateral:**  2003 KENWORTH CONSTRUCT T800 TRUCK (VIN 1XKDDB9X53R388607).
Type: Comprehensive and collision.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements: Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Latest Delivery Date: By the loan closing date.

**Collateral:**  2003 KENWORTH CONSTRUCT T800 TRUCK (VIN 3WKDDB9X93F384546).
Type: Comprehensive and collision.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements: Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Latest Delivery Date: By the loan closing date.

**Collateral:**  2007 PETERBILT CONVENTIONAL 378 TRUCK (VIN 1XPFDB9X97N742323).
Type: Comprehensive and collision.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements: Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Latest Delivery Date: By the loan closing date.

**Collateral:**  2006 KENWORTH CONSTRUCT W900 TRUCK (VIN 1XKWDB9X86R115237).
Type: Comprehensive and collision.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements: Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Latest Delivery Date: By the loan closing date.

**Collateral:**  2007 PETERBILT CONVENTIONAL 378 TRUCK (VIN 1XPFDB9X77N742322).
Type: Comprehensive and collision.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements: Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Latest Delivery Date: By the loan closing date.

**Collateral:**  2003 PETERBILT CONVENTIONAL 379 TRUCK (VIN 1XP5D49X23D597164).
Type: Comprehensive and collision.

**AGREEMENT TO PROVIDE INSURANCE**
**(Continued)**

Loan No: [REDACTED]                                                                                                Page 2

Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements:  Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Latest Delivery Date: By the loan closing date.

**Collateral:**  **1993 PETERBILT CONVENTIONAL 379 TRUCK (VIN 1XP5DB9X1PD331810).**
Type:  Comprehensive and collision.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements:  Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Latest Delivery Date: By the loan closing date.

**Collateral:**  **1982 STANDARD TRAILER (VIN 1S9T74221C0017016).**
Type:  Comprehensive and collision.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements:  Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Latest Delivery Date: By the loan closing date.

**Collateral:**  **2011 MENARD VACUUM TRAILER (VIN 1M9TS4023BD815324).**
Type:  Comprehensive and collision.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements:  Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Latest Delivery Date: By the loan closing date.

**Collateral:**  **2011 HERCULES TRAILER (VIN 3M9H5TA23BG009129).**
Type:  Comprehensive and collision.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements:  Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Latest Delivery Date: By the loan closing date.

**Collateral:**  **2011 DRAGON TRAILER (VIN 1UNST4227BL086784).**
Type:  Comprehensive and collision.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements:  Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Latest Delivery Date: By the loan closing date.

**Collateral:**  **2014 GALYEAN 180BBI VACUUM TANK TRAILER (VIN 1G9VT5037EH015033).**
Type:  Comprehensive and collision.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements:  Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Latest Delivery Date: By the loan closing date.

**Collateral:**  **2014 GALYEAN 180BBI VACUUM TANK TRAILER (VIN 1G9VT5033EH015031).**
Type:  Comprehensive and collision.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements:  Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Latest Delivery Date: By the loan closing date.

**Collateral:**  **2014 GALYEAN 180BBI VACUUM TANK TRAILER (VIN 1G9VT5035EH015032).**
Type:  Comprehensive and collision.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements:  Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Latest Delivery Date: By the loan closing date.

**Collateral:**  **2001 INTERNATIONAL 9200I TRUCK (VIN 2HSCEAERX1C003632).**
Type:  Comprehensive and collision.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements:  Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
Latest Delivery Date: By the loan closing date.

**Collateral:**  **1996 MACK 600 CH600 1M2AA13Y1TW061217.**
Type:  Comprehensive and collision.
Amount: Full Insurable Value.
Basis: Replacement value.
Endorsements:  Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a

## AGREEMENT TO PROVIDE INSURANCE
### (Continued)

Loan No: [ ]                                                                                    Page 3

minimum of 30 days prior written notice to Lender.
**Latest Delivery Date:** By the loan closing date.

**Collateral:** **2000 FREIGHTLINER CONVENTIONAL FLD120 TRUCK (VIN 1FUPCDYB8YPB09100).**
**Type:** Comprehensive and collision.
**Amount:** Full Insurable Value.
**Basis:** Replacement value.
**Endorsements:** Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
**Latest Delivery Date:** By the loan closing date.

**Collateral:** **1994 HERR TRAILER (VIN 1L7HSFS150N101194).**
**Type:** Comprehensive and collision.
**Amount:** Full Insurable Value.
**Basis:** Replacement value.
**Endorsements:** Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
**Latest Delivery Date:** By the loan closing date.

**Collateral:** **2008 DCT TRAILER (VIN 4GBF1624681018084).**
**Type:** Comprehensive and collision.
**Amount:** Full Insurable Value.
**Basis:** Replacement value.
**Endorsements:** Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
**Latest Delivery Date:** By the loan closing date.

**Collateral:** **2004 FORD F250 SUPER DUTY PICKUP TRUCK (VIN 1FTNW21P64ED72768).**
**Type:** Comprehensive and collision.
**Amount:** Full Insurable Value.
**Basis:** Replacement value.
**Endorsements:** Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
**Latest Delivery Date:** By the loan closing date.

**Collateral:** **2004 FORD F150 4 DOOR EXT CAB TRUCK (VIN 1FTPX14504NA04757).**
**Type:** Comprehensive and collision.
**Amount:** Full Insurable Value.
**Basis:** Replacement value.
**Endorsements:** Lender loss payable clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender.
**Latest Delivery Date:** By the loan closing date.

**INSURANCE COMPANY.** Grantor may obtain insurance from any insurance company Grantor may choose that is reasonably acceptable to Lender. Grantor understands that credit may not be denied solely because insurance was not purchased through Lender.

**FAILURE TO PROVIDE INSURANCE.** Grantor agrees to deliver to Lender, on the latest delivery date stated above, proof of the required insurance as provided above, with an effective date of May 6, 2016, or earlier. Grantor acknowledges and agrees that if Grantor fails to provide any required insurance or fails to continue such insurance in force, Lender may do so at Grantor's expense as provided in the applicable security document. The cost of any such insurance, at the option of Lender, shall be added to the Indebtedness as provided in the security document. GRANTOR ACKNOWLEDGES THAT IF LENDER SO PURCHASES ANY SUCH INSURANCE, THE INSURANCE WILL PROVIDE LIMITED PROTECTION AGAINST PHYSICAL DAMAGE TO THE COLLATERAL, UP TO AN AMOUNT EQUAL TO THE LESSER OF (1) THE UNPAID BALANCE OF THE DEBT, EXCLUDING ANY UNEARNED FINANCE CHARGES, OR (2) THE VALUE OF THE COLLATERAL; HOWEVER, GRANTOR'S EQUITY IN THE COLLATERAL MAY NOT BE INSURED. IN ADDITION, THE INSURANCE MAY NOT PROVIDE ANY PUBLIC LIABILITY OR PROPERTY DAMAGE INDEMNIFICATION AND MAY NOT MEET THE REQUIREMENTS OF ANY FINANCIAL RESPONSIBILITY LAWS.

**AUTHORIZATION.** For purposes of insurance coverage on the Collateral, Grantor authorizes Lender to provide to any person (including any insurance agent or company) all information Lender deems appropriate, whether regarding the Collateral, the loan or other financial accommodations, or both.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AGREEMENT TO PROVIDE INSURANCE AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED MAY 6, 2016.**

**GRANTOR:**

BIRD INDUSTRIES, INC.

By: _____
LAURA J. BIRD, President of BIRD INDUSTRIES, INC.



This document is a representation of a filing made electronically through

**Doc #: 20161331152346**

**FILED**

## FINANCING STATEMENT

**A NAME & PHONE OF CONTACT AT FILER (Optional)**
JANA ZIMMERMANN 8003688894

**B. EMAIL OF CONTACT AT FILER (Optional)**
loan.ops@nabna com

**C SEND ACKNOWLEDGMENT TO (Name and Address)**

NATIVE AMERICAN BANK
STE 2460
999 18TH ST
DENVER, CO  80202-2415

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

### DEBTORS

**1. TAX IDENTIFICATION NUMBER**

| **b. DEBTOR'S NAME** | | | |
|---|---|---|---|
| OR | **ORGANIZATION'S NAME** BIRD INDUSTRIES, INC. | | |
| | **INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S) INITIAL(S)** | **SUFFIX** |

**d MAILING ADDRESS**
PO BOX 487

| **e. CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|
| BROOKINGS | SD | 57006-0487 | USA |

### SECURED PARTIES

**1. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)**

| | **a. ORGANIZATION'S NAME** NATIVE AMERICAN BANK, N.A. | | |
|---|---|---|---|
| OR | **b INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S) INITIAL(S)** | **SUFFIX** |

**c MAILING ADDRESS**
999 18TH ST, STE 2460

| **d. CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|
| DENVER | CO | 80202-2415 | USA |

**COLLATERAL:  This financing statement covers the following collateral:**

All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

**FINANCING STATEMENT (Form UCC1)**                                        Page 1 of 2

BIRD EXHIBIT 7



**FINANCING STATEMENT**

This document is a representation of a filing made electronically through the South Dakota Secretary of State's web site

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER (Optional)**<br>JANA ZIMMERMANN 8003688894 | Financing Statement Doc #: 20161331152346 |
| **B. EMAIL OF CONTACT AT FILER (Optional)**<br>loan.ops@nabna.com | Filing Date: SUBMISSION PENDING<br>Amount Due: $25.00 |
| **C. SEND ACKNOWLEDGMENT TO  (Name and Address)** | **NOTE: Add $5 processing fee for any additional attachments** |

NATIVE AMERICAN BANK
STE 2460
999 18TH ST
DENVER, CO  80202-2415

Please File By: 06/11/2016

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

Check only if applicable and check only one box.  Collateral is  ☐ held in a Trust
☐ being administered by a Decedent's Personal Representative

Check only if applicable and check only one box
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

OPTIONAL FILER REFERENCE DATA:
Bird #███████

NOTE: All information on this form is public record.

_____   _____
1. Secured Party Signature                                   Date

_____   _____
1. Debtor Signature                                             Date

**FINANCING STATEMENT (Form UCC1)**                          Page 2 of 2

B0006-5636  05/16/2016 9:02AM Rec'd by SD SOS



# *South Dakota Secretary of State*
## SHANTEL KREBS

NATIVE AMERICAN BANK                                        May 17, 2016
STE 2460
999 18TH ST
DENVER, CO 80202-2415

## UCC Financing Statement Acknowledgement

**FILING INFORMATION**

Financing Statement Doc #:      20161331152346
Filing Date:                    05/16/2016
Lapse Date                      05/16/2021
Record Type:                    UCC

**DEBTOR INFORMATION**
Debtor Name:                    BIRD INDUSTRIES, INC.
Address:                        PO BOX 487
                                BROOKINGS, SD 57006-0487

**SECURED PARTY INFORMATION**
Secured Party Name:             NATIVE AMERICAN BANK, N.A.
Address:                        999 18TH ST
                                STE 2460
                                DENVER, CO 80202-2415

This acknowledges the filing of the attached UCC1 document. If we may be of any further service to you,
please contact us at the number noted below.

*Shantel Krebs*

Shantel Krebs
Secretary of State
State of South Dakota

Enclosures: Original Documents

**South Dakota Secretary of State · 500 E. Capitol Ave · Pierre, SD 57501-5070
http://sdsos.gov/ · phone (605) 773-4422 · fax (605) 773-4550
sos.ucc@state.sd.us**

Page 1 of 1

# RECEIPT



**South Dakota Secretary of State**
500 E. Capitol Ave
Pierre, SD 57501-5070

NATIVE AMERICAN BANK
STE 2460
999 18TH ST
DENVER, CO  80202-2415

## RECEIPT INFORMATION

Receipt #:        **001033541**
Receipt Date:   **05/17/2016**
Processed By:  **Val Boe**

## DO NOT PAY!
## This is not a bill.

| Description of Charges | Reference | Quantity | Unit Price | Total |
|---|---|---|---|---|
| UCC Financing Stmt | 20161331152346 | 1 | $25.00 | $25.00 |

**TOTAL CHARGES PAID**    **$25.00**

| Description of Payment | Reference | Amount |
|---|---|---|
| Payment-Check/MO | 2547 | $25.00 |

**TOTAL PAYMENT**    **$25.00**

phone (605) 773-3537  corporations   (605) 773-4845  ucc  (605) 773-4422

BIRD EXHIBIT 7



# United States Department of the Interior

## OFFICE OF THE SECRETARY
Washington, DC 20240

May 2, 2018

Bird Industries, Inc.
Laura J. Bird

Re: Bird Industries, Inc.
Loan Guarantee #
Balance due $ 631,703.88 as of April 10, 2018

Dear Ms. Laura Bird:

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**

## OFFICIAL USE

Sent To Bird Industries

---

## ***IMPORTANT***
### FOR A DESCRIPTION OF YOUR RIGHTS SEE THE ENCLOSED NOTICE OF RIGHTS

The purpose of this letter is to demand payment for Loan Guarantee #⬛⬛⬛⬛. On or about March 1, 2018, the Division of Capital Investment paid a claim for loss to Native American Bank. As a result, this debt is now owed to the United States Government. The Promissory Note provides for acceleration of the entire indebtedness on the event of default. The balance is now due.

Demand is made upon you for full payment of the following amount:

| | | |
|---|---|---|
| Principal | $ 594,111.40 | |
| Interest | $ 37,592.48 | as of April 11, 2018 |
| Late fees | $ 00.00 | |

Total due $ 631,703.88    as of April 11, 2018
Interest is accruing at a daily rate of 7.250%

Payment may be made by cashier's check made payable to the Bureau of Indian Affairs and sent to the following address:

Bureau of Indian Affairs
Attn: Loan Accounting Section
1001 Indian School Road, Suite 350
Albuquerque, New Mexico 87104
Reference Loan#⬛⬛⬛⬛

Payment may also be made electronically at https://www.pay.gov/public/form/start/76177312. Please include your loan number to ensure proper credit.

If you are remitting payment via mail or through our Web Portal, please call or email me with the tracking number from the delivery company or a copy of the pay.gov confirmation.

To dispute the validity of this debt or any portion thereof, you must notify this office in writing within **30 days** after receiving this notice. Please include any documents to support your dispute. Upon request, this office will provide you with a copy of the loan documents.

If you do not dispute this debt or remit payment for the total amount due of $ 631,703.88 within 30 days of receipt of this notice, collection activity will continue.

If you have any questions or want to make payment arrangements, please call or email me at the information provided below.

Sincerely,

Sherrie A. Miller, Collections Coordinator
Division of Capital Investment
Office of Indian Energy & Economic Development
1951 Constitution Avenue N.W. MS-20-SIB
Washington, D.C. 20245
202-208-3658 (Office)
202-208-4564 (Fax)
sherrie.miller@bia.gov

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

# "NOTICE OF RIGHTS"

1. **Enforced Collections.** You are notified that we may refer your debt to the Department of Justice for enforced collections. You have the following rights:

    - You may inspect and copy DOI records related to the debt.
    - You may request a review of the DOI's determination that you owe a debt, or request a waiver of the debt if waiver is provided for by law.
    - You may be entitled to an oral hearing if required by statue or if the DOI decides that the question of the validity of your debt cannot be resolved by review of the documentary evidence.
    - You may enter into a written agreement with DOI to pay the debt over time. You must contact Sherrie Miller, Collections Coordinator, at 202 208-3658 sherrie.miller@bia.gov to make arrangements under this paragraph within thirty (30) days from the date of this letter.

2. **Administrative Offset.** You are notified that we may refer your debt to the Department of Treasury. If you receive a payment that may be legally offset, we intend to collect your debt by administrative offset. You have the following rights:

    - You may inspect and copy DOI records related to the debt.
    - You may request a review of the DOI's determination that you owe a debt, or request a waiver of the debt if waiver is provided for by law.
    - You may be entitled to an oral hearing if required by statue or if the DOI decides that the question of the validity of your debt cannot be resolved by review of the documentary evidence.
    - You may enter into a written agreement with the DOI to pay the debt over time. You must contact Sherrie Miller, Collections Coordinator, at 202 208-3658 sherrie.miller@bia.gov to make arrangements under this paragraph within thirty (30) days from the date of this letter.

NOTE: You will be separately notified of the rights available to you if we intent to offset the following types of Federal payments: salary, retirement, income tax refund and certain benefits.

3. **Credit Bureau Reporting.** You are notified that we may report your debt to national credit bureaus. The information to be disclosed to commercial/consumer reporting agencies will include your name, address, and tax payer identification number; the amount, status, and history of your debt, and the name of the agency or program under which the debt arose.

You have the following rights with respect to debts to be reported to commercial/consumer reporting agencies:

- You may conduct a complete examination of your debt.
- You may dispute information in the records of the DOI about your debt.

- You may request administrative repeal or review of the debt, unless all administrative appeals have been exhausted.
- You may be entitled to an oral hearing if required by statue or if the DOI determines that the question of validity of your debt cannot be resolved by review of the documentary evidence.

You must contact Sherrie Miller, Collections Coordinator, at 202 208-3658 sherrie.miller@bia.gov within sixty (60) days from the date of this letter to make arrangements under this paragraph.

NOTE: These rights do not apply to debts already reported to commercial/consumer reporting agencies.



# United States Department of the Interior

### OFFICE OF THE SECRETARY
Washington, DC 20240

June 12, 2018

U.S. Postal Service
**CERTIFIED MAIL RECEIPT**
*Domestic Mail Only*

**OFFICIAL USE**

Certified Mail Fee
$
Extra Services & Fees *check box, add fee as appropriate*
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $
Postage
$
Total Postage and Fees
$
Sent To  Bird Industries

PS Form 3800, April 2015       See Reverse for Instructions

Bird Industries, Inc.
Laura J. Bird
██████████
██████████

Re: Bird Industries, Inc.
Loan Guarantee #██████████
Balance due $ 631,703.88 as of April 10, 2018

Dear Ms. Laura Bird:

### ***IMPORTANT***

### FOR A DESCRIPTION OF YOUR RIGHTS SEE THE ENCLOSED NOTICE OF RIGHTS

We notified you on (date of 1st demand letter) that Loan Guarantee #█ went into default and the entire balance is due. Our records indicate that we have not received payment of your outstanding balance. This letter serves as the second notice that your U.S. Loan Guarantee balance is past due, and you owe the following amount:

| | | |
|---|---|---|
| Principal | $ 594,111.40 | |
| Interest | $ 37,592.48 | as of April 11, 2018 |
| Late fees | $ 00.00 | |

Total due $ 631,703.88      as of April 11, 2018
Interest is accruing at a daily rate of 7.250%

Please be advised that unless payment or satisfactory resolution of your loan is made within 30 days from the date of this letter, your delinquent debt may be referred to the U.S. Department of Justice for enforced collections and or liquidation of collateral.

Payment may be made by cashier's check made payable to the Bureau of Indian Affairs and sent to the following address:

Bureau of Indian Affairs
Attn: Loan Accounting Section
1001 Indian School Road, Suite 350
Albuquerque, New Mexico 87104
Reference Loan# ████████

Payment may also be made electronically at https://www.pay.gov/public/form/start/76177312. Please include your loan number to ensure proper credit. If recent payment has been made, please disregard this notice.

If you are remitting payment via mail or through our Web Portal, please call or email me with the tracking number from the delivery company or a printed copy of the pay.gov confirmation.
If we do not hear from you or receive the payment within **30** days from the date of this letter, collection activity will continue.  If you have any questions or want to make payment arrangements, please call or email me at the information provided below.

Sincerely,

Sherrie A. Miller, Collections Coordinator
Division of Capital Investment
Office of Indian Energy & Economic Development
1849 C Street N.W. Room 4136
Washington, D.C. 20245
202-208-3658 (Office)
202-208-4564 (Fax)
sherrie.miller@bia.gov

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

# "NOTICE OF RIGHTS"

1. **Enforced Collections.** You are notified that we may refer your debt to the Department of Justice for enforced collections. You have the following rights:

   - You may inspect and copy DOI records related to the debt.
   - You may request a review of the DOI's determination that you owe a debt, or request a waiver of the debt if waiver is provided for by law.
   - You may be entitled to an oral hearing if required by statue or if the DOI decides that the question of the validity of your debt cannot be resolved by review of the documentary evidence.
   - You may enter into a written agreement with DOI to pay the debt over time. You must contact Sherrie Miller, Collections Coordinator, at 202 208-3658 sherrie.miller@bia.gov to make arrangements under this paragraph within thirty (30) days from the date of this letter.

2. **Administrative Offset.** You are notified that we may refer your debt to the Department of Treasury. If you receive a payment that may be legally offset, we intend to collect your debt by administrative offset. You have the following rights:

   - You may inspect and copy DOI records related to the debt.
   - You may request a review of the DOI's determination that you owe a debt, or request a waiver of the debt if waiver is provided for by law.
   - You may be entitled to an oral hearing if required by statue or if the DOI decides that the question of the validity of your debt cannot be resolved by review of the documentary evidence.
   - You may enter into a written agreement with the DOI to pay the debt over time. You must contact Sherrie Miller, Collections Coordinator, at 202 208-3658 sherrie.miller@bia.gov to make arrangements under this paragraph within thirty (30) days from the date of this letter.

NOTE: You will be separately notified of the rights available to you if we intent to offset the following types of Federal payments: salary, retirement, income tax refund and certain benefits.

3. **Credit Bureau Reporting.** You are notified that we may report your debt to national credit bureaus. The information to be disclosed to commercial/consumer reporting agencies will include your name, address, and tax payer identification number; the amount, status, and history of your debt, and the name of the agency or program under which the debt arose.

You have the following rights with respect to debts to be reported to commercial/consumer reporting agencies:

- You may conduct a complete examination of your debt.
- You may dispute information in the records of the DOI about your debt.
- You may request administrative repeal or review of the debt, unless all administrative appeals have been exhausted.

- You may be entitled to an oral hearing if required by statue or if the DOI determines that the question of validity of your debt cannot be resolved by review of the documentary evidence.

You must contact Sherrie Miller, Collections Coordinator, at 202 208-3658 sherrie.miller@bia.gov within sixty (60) days from the date of this letter to make arrangements under this paragraph.

NOTE: These rights do not apply to debts already reported to commercial/consumer reporting agencies.

## Track USPS package

70170190000029120452
www.usps.com

USPS package #70170190000029120452
www.usps.com

# Delivered: Tue, Jun 19, 03:32 PM

| Processed | | In transit | Delivered |
|---|---|---|---|
| DATE | TIME | LOCATION | STATUS |
| Jun 19 | 3:32 PM | Brookings, SD United States | Delivered, individual picked up at post office |
| Jun 15 | 8:08 AM | Brookings, SD United States | Available for pickup |
| Jun 15 | 3:24 AM | Sioux Falls Sd Distribution Center | Departed USPS regional facility |
| Jun 14 | 12:00 AM | | In transit to next facility |
| Jun 14 | 12:45 PM | Sioux Falls Sd Distribution Center | Arrived at USPS regional facility |

### United States Postal Service



The United States Postal Service is an independent agency of the United States federal government responsible for providing postal service in the United States, including its insular areas and associated states. It is one of the few government agencies ...

Official site   Wikipedia   Twitter   Facebook   LinkedIn

Customer service: +1 800-275-8777
Representative: Chat online on Messenger
Founded: Jul 01, 1971
Revenue: $74.78 billion USD (2008)
Headquarters: Washington, D.C., United States
Subsidiaries: United States Postal Inspection Service, United States Postal Service Office of Inspector General

Data from Wikipedia · Feedback
Text under CC-BY-SA license
Suggest an edit





# United States Department of the Interior

### OFFICE OF THE SECRETARY
### Washington, DC 20240

July 16, 2018

Bird Industries, Inc.
Laura J. Bird
P.O. Box 487
████████████006

Re: Bird Industries, Inc.
Loan Guarantee # ████████████
Balance due $ 631,703.88 as of April 10, 2018

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**

**OFFICIAL USE**

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)      $ _____
☐ Return Receipt (electronic)    $ _____
☐ Certified Mail Restricted Delivery  $ _____
☐ Adult Signature Required       $ _____
☐ Adult Signature Restricted Delivery $ _____
Postmark
Here
Postage
$
Total Postage and Fees
$
Sent To _Bird Industries_
Street _____
City _____
PS Form 3800, April 2015              See Reverse for Instructions

7017 0190 0000 2912 0438

Dear Ms. Laura Bird:

### ***IMPORTANT***

### FOR A DESCRIPTION OF YOUR RIGHTS SEE THE ENCLOSED NOTICE OF RIGHTS

Our records indicate that you have failed to remit any portion of your debt owed to the Federal Government. You were previously notified on May 2, 2018 and June 12, 2018 of the nature and amount of this debt. This letter serves as the third and final notice that your U.S Loan Guarantee balance is past due.

Pursuant to 31 CFR § 904.4, we will either refer this claim to the U.S. Department of Justice or we will refer this claim to the U.S. Department of Treasury [31 U.S.C § 3711(g)] for enforced collections. You can avoid this action by contacting our office for a satisfactory resolution or by paying the balance of your loan within 30 days from the date of this letter.

If your debt is referred to the U.S. Department of Justice, they will initiate vigorous collection of your debt and will take any or all of the following actions:

**Litigation:** A lawsuit maybe filed against you, resulting in increased cost to you.

**Foreclosure:** All collateral maybe foreclosed and or sold at public auction.

If your loan is referred to the U.S Department of Treasury, they will take any or all of the following actions:

**Reduce Federal payment, including your tax refund:** Certain payments from the U.S. Government may be reduced by the amount of the debt. Federal payments subject to reduction include your Federal salary or retirement pay, Internal Revenue (IRS) tax refunds, contractor/vendor payments, and certain Federal benefit payments. If you are entitled to receive a payment that may be offset, the U.S Department of Treasury intends to reduce your payment to collect your debt.

Refer your debt to a private collection agency: Your delinquent debt may be referred to a private collection agency for collection, resulting in additional cost to you.

Credit Reporting: Your delinquent debt may be reported to national credit bureaus. Your delinquent debt may be reported immediately to a commercial/consumer reporting agency without any further notice.

Disbarment: You will be disbarred from obtaining any further loans or loan guarantee from the U.S. Government

Investigation: U.S. Department of Treasury may order an investigation of your assets to determine your ability to pay your debt.

Report your debt to the IRS: If your debt is determined to be uncollectable, the U.S. Department of Treasury may report your debt to the IRS as income and provide you with a 1099C. You may be required to pay taxes on this type of income.

You have certain rights if we decide to take any of these steps. For a description of those rights, see the enclosed "Notice of Rights".

Please contact me immediately for repayment options or an exact payoff amount since interest accrues daily. The cashier's check must be payable to the Bureau of Indian Affairs and sent to the following address:

Bureau of Indian Affairs
Attn: Loan Accounting Section
1001 Indian School Road, Suite 350
Albuquerque, New Mexico 87104
Reference Loan# ▓▓▓▓▓▓

Payment can also be made electronically at https://www.pay.gov/public/form/start/76177312. You must include your loan number to ensure proper credit.

If you are remitting payment via mail or through our Web Portal, please call or email me with the tracking number from the delivery company or a printed copy of the pay.gov confirmation. If I do not hear from you or receive the amount due within 30 days from the date of this letter, your Guarantee loan # ▓▓▓▓▓▓▓ will be referred to either the U.S. Department of Justice or the U.S. Department of Treasury. If you have any questions, please feel free to call or email me at the information provided below. If recent payment has been made, please disregard this notice.

Sincerely,

*[signature]*

Sherrie A. Miller, Collections Coordinator
Division of Capital Investment
Office of Indian Energy & Economic Development
1849 C Street N.W. Room 4136
Washington, D.C. 20245
202-208-3658 (Office)
202-208-4564 (Fax)
sherrie.miller@bia.gov

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

# "NOTICE OF RIGHTS"

1. **Enforced Collections.** You are notified that we may refer your debt to the Department of Justice for enforced collections. You have the following rights:

   - You may inspect and copy DOI records related to the debt.
   - You may request a review of the DOI's determination that you owe a debt, or request a waiver of the debt if waiver is provided for by law.
   - You may be entitled to an oral hearing if required by statue or if the DOI decides that the question of the validity of your debt cannot be resolved by review of the documentary evidence.
   - You may enter into a written agreement with DOI to pay the debt over time. You must contact Sherrie Miller, Collections Coordinator, at 202 208-3658 sherrie.miller@bia.gov to make arrangements under this paragraph within thirty (30) days from the date of this letter.

2. **Administrative Offset.** You are notified that we may refer your debt to the Department of Treasury. If you receive a payment that may be legally offset, we intend to collect your debt by administrative offset. You have the following rights:

   - You may inspect and copy DOI records related to the debt.
   - You may request a review of the DOI's determination that you owe a debt, or request a waiver of the debt if waiver is provided for by law.
   - You may be entitled to an oral hearing if required by statue or if the DOI decides that the question of the validity of your debt cannot be resolved by review of the documentary evidence.
   - You may enter into a written agreement with the DOI to pay the debt over time. You must contact Sherrie Miller, Collections Coordinator, at 202 208-3658 sherrie.miller@bia.gov to make arrangements under this paragraph within thirty (30) days from the date of this letter.

   NOTE: You will be separately notified of the rights available to you if we intent to offset the following types of Federal payments: salary, retirement, income tax refund and certain benefits.

3. **Credit Bureau Reporting.** You are notified that we may report your debt to national credit bureaus. The information to be disclosed to commercial/consumer reporting agencies will include your name, address, and tax payer identification number; the amount, status, and history of your debt, and the name of the agency or program under which the debt arose.

You have the following rights with respect to debts to be reported to commercial/consumer reporting agencies:

   - You may conduct a complete examination of your debt.
   - You may dispute information in the records of the DOI about your debt.

- You may request administrative repeal or review of the debt, unless all administrative appeals have been exhausted.
- You may be entitled to an oral hearing if required by statue or if the DOI determines that the question of validity of your debt cannot be resolved by review of the documentary evidence.

You must contact Sherrie Miller, Collections Coordinator, at 202 208-3658 sherrie.miller@bia.gov within sixty (60) days from the date of this letter to make arrangements under this paragraph.

NOTE: These rights do not apply to debts already reported to commercial/consumer reporting agencies.



United States Department of Justice
Nationwide Central Intake Facility (NCIF)
2 Constitution Square
145 N. Street, NE 6W.316
Washington, DC 20530



September 6, 2018

Bird Industries, Inc.
1441 6th Street Suite 200
Brookings, SD 57006

| Re: | Case Name | US VS |
|---|---|---|
| | Account Number: | |
| | Total Amount Due: | $647,399.00 |
| | Payment Due Date: | Immediately |

*This is a demand for payment of the above-referenced debt. If you are currently represented by an attorney, please advise this office so that future correspondence may be directed to your attorney.*

Dear Bird Industries, Inc.:

The DEPARTMENT OF INTERIOR has referred your debt in the above referenced amount to the United States Attorney Office/South Dakota District to initiate a federal court legal action against you and may obtain a civil judgment in the United States District Court for the collection of this debt. In the event an action is filed, that office will seek additional costs and fees which will be added to your debt.

**To avoid legal action against you and further increases to the amount you owe, you should pay this debt in full, immediately upon receipt of this letter, or contact the United States Attorney Office /South Dakota District at 605-330-4400 to discuss this debt. If you or your attorney does not contact this office the following may occur:**

- o  **The federal court can enter a judgment ordering you to pay. Judgments do not expire and may appear on your credit report.**
- o  **A lien may be placed on any property you own, which means you cannot sell or transfer your property until the debt has been paid in full.**
- o  **Enforcement of the judgment may include attachment or execution of your non-exempt personal property, offset of your federal tax refund, and garnishment of your wages.**

**Act now and prevent the above actions from happening to you.**

**How do you pay your debt?**
- • **Pay Online:** Visit https://pay.gov/public/form/start/5137251
- • **Pay by Mail:** Send a check or money order payable to the U.S. Department of Justice in the enclosed, self-addressed envelope and include your name and the above referenced account number on the face of your check. To pay by credit card, use the form on the back of this letter.

Sincerely,
United States Department of Justice
Debt Collection Management
Nationwide Central Intake Facility

**United States Department of Justice**
**Nationwide Central Intake Facility (NCIF)**
**2 Constitution Square**
**145 N. Street, NE 6W.316**
**Washington, DC 20530**



September 6, 2018

Laura Bird

▮▮▮▮▮▮▮▮▮▮

| Re: | Case Name | **US VS** |
| --- | --- | --- |
| | **Account Number:** | ▮▮▮▮▮▮▮ |
| | **Total Amount Due:** | **$647,399.00** |
| | **Payment Due Date:** | **Immediately** |

*This is a demand for payment of the above-referenced debt. If you are currently represented by an attorney, please advise this office so that future correspondence may be directed to your attorney.*

Dear Laura Bird:

The DEPARTMENT OF INTERIOR has referred your debt in the above referenced amount to the United States Attorney Office/South Dakota District to initiate a federal court legal action against you and may obtain a civil judgment in the United States District Court for the collection of this debt. In the event an action is filed, that office will seek additional costs and fees which will be added to your debt.

**To avoid legal action against you and further increases to the amount you owe, you should pay this debt in full, immediately upon receipt of this letter, or contact the United States Attorney Office /South Dakota District at 605-330-4400 to discuss this debt.** If you or your attorney does not contact this office the following may occur:

○  **The federal court can enter a judgment ordering you to pay.  Judgments do not expire and may appear on your credit report.**

○  **A lien may be placed on any property you own, which means you cannot sell or transfer your property until the debt has been paid in full.**

○  **Enforcement of the judgment may include attachment or execution of your non-exempt personal property, offset of your federal tax refund, and garnishment of your wages.**

Act now and prevent the above actions from happening to you.

How do you pay your debt?

•  **Pay Online:** Visit https://pay.gov/public/form/start/5137251

•  **Pay by Mail:** Send a check or money order payable to the U.S. Department of Justice in the enclosed, self-addressed envelope and include your name and the above referenced account number on the face of your check. To pay by credit card, use the form on the back of this letter.

Sincerely,
United States Department of Justice
Debt Collection Management
Nationwide Central Intake Facility



**U.S. Department of Justice**

*Ronald A. Parsons, Jr.*
*United States Attorney*
*District of South Dakota*

---

| | | |
|---|---|---|
| *515 Ninth Street #201*<br>*Rapid City, SD 57701*<br>*605.342.7822*<br>*FAX: 605.342.1108* | **Reply to:  PO Box 7240**<br>**Pierre, SD 57501**<br>**605.224.5402**<br>**FAX: 605.224.8305** | *PO Box 2638*<br>*Sioux Falls, SD 57101-2638*<br>*605.330.4400*<br>*FAX: 605.330.4410* |

November 1, 2018

Bird Industries, Inc.,
P.O. Box 429
504 W. 8th Street, S.
Brookings, SD  57006

Bird Industries, Inc.,
Registered Agents Inc.,
25 1st Ave SW, STE A
Watertown, SD  57201

Laura J. Bird


Bird Industries, Inc.,
Principal Office
200 N. 3rd Street
Bismarck, ND 58501

RE:  United States v. Bird Industries, Inc. and Laura J. Bird, Guarantor

The Department of the Interior, Bureau of Indian Affairs, Division of Capital Investment, Office of Indian Energy & Economic Development (OIEED), has referred Loan Guarantee #␣␣␣␣␣␣ to the United States Attorney's Office for foreclosure proceedings in Federal District Court, along with your promissory note, security agreement, Business Loan Agreement, and Commercial Guaranty to the Native American Bank, N.A.. As you are aware, you have defaulted on the promissory note, which has been assigned to OIEED.

The debt has been accelerated, making the entire unpaid debt immediately due and payable.  As of August 21, 2018, the following amounts are outstanding:

Principal:  $594,111.40
Interest:       53,287.60
Total:       $647,399.00

November 1, 2018
Page 2

Now that OIEED has referred your account for legal action, we will begin formal foreclosure proceedings, seek possession of any secured chattels, and sell those to pay down or pay off your loan balance. If chattels do not satisfy the debt, we will seek a judgment against Bird Industries, Inc., and Laura J. Bird the guarantor.  Our office will give you one last opportunity to avoid foreclosure action.   If you can secure financing to pay off this debt balance in full or wish to discuss other voluntary options, please contact me. However, if I do not hear from you **within thirty days of the date of this letter**, we will proceed with the filing of a foreclosure complaint in Federal District Court.

Before deciding what action to take regarding this potential foreclosure action, I would advise you to seek the advice of an attorney. As the government's attorney, I cannot give you legal advice on what your options are and what you should do. If you do obtain counsel, please have counsel contact me as soon as possible.

Sincerely,

RONALD A. PARSONS, JR.

Cheryl Schrempp DuPris
Assistant U.S. Attorney

cc:  Sherrie Miller, OIEED